[L. A. No. 23183. In Bank. July 5, 1955.]

KENNETH A. McCONNELL et al., Appellants, v. HARRY
L. COWAN, Respondent.

Lyle M. Stevens for Appellants.

Leo Friedman and Orlan S. Friedman for Respondent.

CARTER, J.—By his complaint in this action plaintiff sought to have it declared that he was not under obligation to pay defendant an amount agreed upon as compensation for sevices rendered by defendant in procuring a lease of certain real property for plaintiff. Defendant by cross-complaint sought to recover said compensation from plaintiff. Judgment was rendered in favor of defendant, and plaintiff has appealed.

From the trial court's findings it appears that E. D. Mitchell owned certain real property in the city of Long Beach. Plaintiff was desirous of leasing the property from Mitchell and, on October 24, 1952, he authorized defendant to submit to Mitchell an offer to lease the property. It was thereupon orally agreed between plaintiff and defendant that if plaintiff were able to secure a lease of the property he

would pay defendant 5 per cent of the net profits from the business to be conducted on the property by plaintiff. The oral agreement was followed by a written agreement on October 27, 1952. The offer from plaintiff to Mitchell for such lease was transmitted by defendant to and refused by Mitchell. But on October 28, 1952, Mitchell authorized defendant to submit a written offer for a lease of the property to plaintiff, varying from plaintiff's offer, which provided that Mitchell would pay defendant a 3 per cent commission. The latter offer was submitted by defendant to plaintiff and was accepted by him. Thereafter, on November 4, 1952, plaintiff and Mitchell, without defendant's participation, executed a lease of the property. Mitchell had no knowledge of the 5 per cent agreement between plaintiff and defendant, but plaintiff knew defendant was to receive a 3 per cent commission from Mitchell. The court then found that defendant was acting as a middleman to bring plaintiff and Mitchell together and was not an agent of either, hence the 5 per cent agreement was valid and enforceable because in such a situation the rule was not applicable that an agent may not recover compensation from both principals unless full disclosure was made to each. The court also found that defendant had no authority to vary the terms of or exercise any discretion in connection with plaintiff's offer to Mitchell and the same was true of the offer from Mitchell to plaintiff. It was admitted that defendant was, at the time of the transaction here involved, a licensed real estate broker.

The evidence is as follows: Defendant testified that, before contacting plaintiff, he knew Mitchell wanted to lease the property, but had no listing from him. About October 24, 1952, he approached plaintiff, who was engaged in the hamburger sandwich business, and talked to him about leasing the Mitchell property. Thereafter three writings on plaintiff's stationery, addressed to defendant, setting forth the agreement as to defendant's commission between the parties, were signed by plaintiff.* The first document was dated October 24, 1952, the second October 27, 1952, and the third November 5, 1952. The first two were signed on October 27, 1952. The first document stated that defendant was therewith authorized "to offer for me" (plaintiff) a proposition to lease a portion of Mitchell's property in the city of Long Beach at a rental

---

*Apparently the papers were signed in blank by plaintiff and filled in by defendant but no question is here presented that these documents were agreed to by plaintiff.

of $750 per month provided Mitchell expended $25,000 for improvements on the property; it closed by stating that plaintiff would lease, as offered, only if Mitchell "pays you [defendant] your desired leasing fee." Defendant submitted the offer to Mitchell on October 27, 1952, but does not know whether he showed him the first document. Mitchell rejected the offer as he did not want to make any improvements but said he wanted to lease the property on a ground lease basis. Defendant returned to plaintiff thereafter on the same day and told him he wanted "it put in writing," meaning the oral agreement made on October 24th that he was to get 5 per cent of the net profits from plaintiff's business to be conducted on the property proposed to be·leased as commission for "getting the lease." The second writing followed, which stated that "for and in consideration of ten dollars . . . and other considerations given by you [defendant] to me" (plaintiff), plaintiff agreed to pay the 5 per cent commission on the basis above mentioned. The third writing merely amplified the second. In explanation of the "other considerations" in the second writing, defendant testified he intended to take Mitchell's property for himself and that the substance of his discussion with plaintiff was that the latter had been unable to get the property. Defendant said he was going to see Mitchell and get it for himself, and plaintiff asked defendant what kind of a deal he would make with him if he got it for plaintiff instead of himself, to which defendant queried, what deal would be fair. They then agreed upon "the five per cent." In further amplification of the nature of the arrangement between plaintiff and defendant, the latter testified: "After I had talked with Mr. Mitchell . . . in my original conversation with him [plaintiff] on the 24th, he had already told me that he would take the place whether he got the building built or he didn't get the building built. He would take a ground lease or take it with the building on it. He agreed to my five per cent and I was to see Mr. Mitchell to find out *if I could get one of the deals.* When Mr. Mitchell agreed to the $500 a month ground lease I told . . . [plaintiff] I wanted to put our verbal agreement as to the five per cent in writing, it looked like we were going to make this deal." (Emphasis added.) Defendant further testified that plaintiff could not have obtained the property on his own initiative and the 5 per cent commission was for getting a lease from Mitchell for plaintiff. After Mitchell rejected plaintiff's offer and on October 28th, defendant obtained from Mitchell

a writing (hereinafter called fourth writing) addressed to defendant in which Mitchell agreed to lease the property to plaintiff for a term of 10 years at $500 per month; no provision was made for improvements by Mitchell and it embodied substantially the same basic terms as later appeared in the lease executed by plaintiff and Mitchell; Mitchell also agreed therein to pay defendant 3 per cent of the total rental as a "leasing commission." Defendant advised plaintiff of Mitchell's offer and plaintiff signed on the fourth writing his acceptance thereof. Defendant was paid the 3 per cent by Mitchell at the time the fourth writing was signed and before plaintiff and Mitchell executed the lease. Defendant testified he did not remember whether he told Mitchell he was receiving a commission from plaintiff. The lease was signed on November 4, 1952. Mitchell testified that defendant took no part in any negotiations after getting the fourth writing signed by both parties.

Plaintiff's case is based on the rule that " [W]here an agent has assumed to act in a double capacity, a principal who has no knowledge of such dual representation . . . may avoid the transaction. Actual injury is not the principle upon which the law holds such transaction voidable; rather, the law holds it voidable in order to prevent the agent from putting himself in a position where he will be tempted to betray his principal. . . . To this point Mechem in his work on agency, second edition, volume 2, section 2138, page 1715, says: '. . . an agent who is relied upon to exercise, in behalf of his principal, his skill, judgment, knowledge or influence, will not be permitted without such principal's full knowledge and consent, to undertake to represent the other party also in the same transaction. Such conduct is a fraud upon his principal, and not only will the agent not be entitled to compensation for services so rendered, but the contract or dealings made or had by the agent, while so acting also for the other party without the knowledge or consent of the principal, are not binding upon the latter, and if they still remain executory, he may repudiate them on that ground, or, if they have been executed in whole or in part, he may by acting promptly and before the rights of innocent parties have intervened, restore the consideration received, rescind the contract and recover back the property or rights with which he has parted under it. It makes no difference that the principal was not in fact injured, or that the agent intended no wrong or that the other party acted in good faith; the double agency is a fraud

upon the principal and he is not bound.' '' (*Vice* v. *Thacker,* 30 Cal.2d 84, 90 [180 P.2d 4]; see also *Glenn* v. *Rice,* 174 Cal. 269 [162 P. 1020]; *Butler* v. *Solano Land Co.,* 203 Cal. 231 [263 P. 530]; *Gordon* v. *Beck,* 196 Cal. 768 [239 P. 309]; 2 Cal.Jur.2d, Agency, § 107; 9 Cal.Jur.2d, Brokers, § 77; Rest., Agency, § 390 et seq.; Bus. & Prof. Code, § 10176, subd. (d).)

■ It is also held that neither principal is liable for the commission unless both knew of the dual representation, even if one does know of it he is not liable if the other does not, which is the situation we have here, because, as above noted, plaintiff knew defendant was to receive a commission from Mitchell. The rule is thus stated: ''His [the agent's] contract for compensation being thus tainted, the law will not permit him to enforce it against either party. . . . And the fact that the party whom he sues was aware of the double agency and of the payment, or agreement to pay, compensation by the other party, and consented thereto, does not entitle him to recover. He must show knowledge by both parties. One party might willingly consent, believing that the advantage would accrue to him, to the detriment of the other. The law will not tolerate such an arrangement, except with the knowledge and consent of both, and will enter into no inquiry to determine whether or not the particular negotiation was fairly conducted by the agent. It leaves him as it finds him, affording him no relief.'' (*Glenn* v. *Rice, supra,* 174 Cal. 269, 272; see also *Gordon* v. *Beck, supra,* 196 Cal. 768; *Riggins* v. *Patterson,* 37 Cal.App. 319 [174 P. 119]; cases collected 14 A.L.R. 464; 80 A.L.R. 1075.)

The question presented, therefore, is whether the evidence shows as a matter of law that the arrangement did not fall within the so-called middleman exception to the dual representation rule later discussed herein. Defendant contends that plaintiff does not question the sufficiency of the evidence to support the findings favorable to the exception and that they show that defendant had no discretion in exercising his agency and hence he was what is sometimes euphemistically called a middleman; that under such circumstances the agent may receive compensation from both principals without disclosing to either that he had an arrangement with both for a commission. ■ The exception is stated: ''If the scope of a broker's employment is limited to bringing parties together so that they may negotiate their own contract, he is a mere middleman. Upon performance, he is entitled to compensation from each of them who has agreed to pay him,

even though the others are unaware of such employment.
█ But if a broker engaged by both parties is clothed with some discretion in the matter of advising or negotiating the transaction, he cannot recover compensation from either, unless both of them knew of the double agency at the time of the transaction.'' (9 Cal.Jur.2d, Brokers, § 77; see also *Clark* v. *Allen,* 125 Cal. 276 [57 P. 985]; *Green* v. *Robertson,* 64 Cal. 75 [28 P. 446]; *King* v. *Reed,* 24 Cal.App. 229 [141 P. 41]; *Carothers* v. *Caine,* 38 Cal.App. 71 [175 P. 478]; *Kennedy* v. *Johnson,* 109 Cal.App. 662 [293 P. 698]; *Anderson* v. *Thacher,* 76 Cal.App.2d 50 [172 P.2d 533]; *Hooper* v. *Mayfield,* 114 Cal.App.2d 802 [251 P.2d 330]; *Butler* v. *Solano Land Co., supra,* 203 Cal. 231; Rest., Agency, §§ 390-394.) █ The word "middleman" is a short term for describing a situation in which the agent has limited authority, that is, he has no power to and does not negotiate the terms on which the principals will deal, yet he is an agent or he may possibly be an independent contractor, or falls in one of the recognized legal categories.* █ Being so limited, there is no opportunity for him to sacrifice the interests of one principal to the detriment of the other and the reason for the dual representation rule fails.

While plaintiff could have been more specific in his attack on the findings (he claims the findings that defendant was a middleman and not an agent for either party are conclusions of law), it is clear that his basic premise is that the evidence shows as a matter of law that this was not a situation where an agent had limited authority—no right or duty to exercise discretion or negotiate in regard to the terms upon which the principals would deal.

█ The writings shed no light on the scope of defendant's authority but defendant's own testimony of the arrangement between him and plaintiff shows as a matter of law that this is not a case of an agent with limited authority and hence the findings are not supported by the evidence. It is true, as pointed out by defendant, that plaintiff testified in regard to the first writing that he was to pay the 5 per cent commission if defendant got the lease from Mitchell on the terms there stated, which would indicate that defendant's sole power was to transmit the offer, and the same is true as to Mitchell and his offer, the fourth writing, but

---

*Commonly a middleman is a trader who buys commodities from the producer and sells them to the retailer or sometimes directly to the consumer.

plaintiff's offer was rejected by Mitchell, and according to defendant's own version (heretofore quoted), he was to see if he "could get one of the deals," from Mitchell, that is, with Mitchell building the improvements as offered by plaintiff, or at a lesser rent without improvements as offered by Mitchell. There was, therefore, vested in defendant, authority to negotiate with Mitchell and get one deal or the other— exercise some discretion. The fact that the lease was drawn and executed without any participation by defendant is not significant, because the basic terms thereof had already been stated in Mitchell's offer and plaintiff's acceptance of it (the fourth writing). It is undisputed that defendant was engaged in the real estate brokerage business and one of his specialties was the negotiation of leases. He said that plaintiff could not obtain a lease from Mitchell on his own initiative and that he was to receive the 5 per cent commission for getting a lease from Mitchell. It appears from defendant's testimony and the undisputed evidence that the transaction was one in which defendant was more than a mere errand boy-servant for plaintiff and Mitchell, to carry offers from one to the other. Although it has been held that whether a person is a "middleman" is generally one of fact (*Clark* v. *Allen, supra,* 125 Cal. 276), it is one of law here on defendant's own testimony as to the arrangement.

The cases in which it has been held that the agent had no discretion and could receive commissions from both parties are distinguishable. In *Clark* v. *Allen, supra,* 125 Cal. 276, and *Green* v. *Robertson, supra,* 64 Cal. 75, the facts do not appear. In *King* v. *Reed, supra,* 24 Cal.App. 229, the broker had only one fixed price which he could transmit to the proposed buyer. In *Carothers* v. *Caine, supra,* 38 Cal.App. 71, only an offer was to be transmitted. Moreover, the last cited case is contrary to *Butler* v. *Solano Land Co., supra,* 203 Cal. 231, and is impliedly overruled by that case. In *Kennedy* v. *Johnson, supra,* 109 Cal.App. 662, the negotiations and deal were made by the principals and the broker only brought them in contact. In *Anderson* v. *Thacher, supra,* 76 Cal.App.2d 50, *Hooper* v. *Mayfield, supra,* 114 Cal.App. 2d 802, and *Butler* v. *Solano Land Co., supra,* 203 Cal. 231, the rule was stated but found not applicable in those cases.

Consideration should also be given to the Real Estate Law regulating the business of real estate brokers and salesmen. (Bus. & Prof. Code, § 10000 et seq.) That statute states the policy against dual representation. A broker's license

may be revoked or suspended if, while he is "performing or attempting to perform" any of the acts within the scope of the regulatory act, he is guilty of "acting for more than one party in a transaction without the knowledge or consent of all parties thereto." (Bus. & Prof. Code, § 10176, subd. (d).) The act defines a broker as one who "offers to buy [or sell], lists, or solicits for prospective purchasers" of real estate and also one who for compensation "negotiates . . . leases [of], or offers to lease" real estate. (Bus. & Prof. Code, § 10131.) "One act, for a compensation" of "offering for another to buy or sell . . . real estate" or "leasing . . . real estate" shall constitute acting as a broker. (Bus. & Prof. Code, § 10134.) If defendant was acting as a broker then under the act the policy against dual representation is applicable to him. The cases holding that various activities and scopes of authority were not within the act—that the agent was only a "middleman"—involved the exercise of less authority than defendant exercised in this case. In *Freeman* v. *Jergins,* 125 Cal.App.2d 536 [271 P.2d 210], *Shaffer* v. *Beinhorn,* 190 Cal. 569 [213 P. 960], *McKenna* v. *Edwards,* 19 Cal.App.2d 327 [65 P.2d 810], and *Crofoot* v. *Spivak,* 113 Cal.App.2d 146 [248 P.2d 45], the one claiming compensation was only to find and introduce to the seller a person who might be interested as a buyer; he neither had nor exercised any other authority. In other cases the authority was broader and a different result was reached (see *Hooper* v. *Mayfield, supra,* 114 Cal.App.2d 556; *Abrams* v. *Guston,* 110 Cal.App.2d 556 [243 P.2d 109]; *Rhode* v. *Bartholomew,* 94 Cal.App.2d 272 [210 P.2d 768]; *Davis* v. *Chipman,* 210 Cal. 609 [293 P. 40]; *Ryan* v. *Walker,* 35 Cal.App. 116 [169 P. 417]; *Cram* v. *McNeil,* 32 Cal.App. 101 [162 P. 140]).

 Applying the rule announced in the above cited cases to the facts of this case leads us to the inevitable conclusion that defendant acted as agent for both plaintiff and Mitchell, and he, therefore, cannot recover compensation from either unless he disclosed to both his agreement to receive compensation from both. This he admittedly failed to do.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.