[No. B060090. Second Dist., Div. Six. Dec. 9, 1992.]

LEENDERT P. HUIJERS, Plaintiff, Cross-defendant and Respondent, v. GORDON R. DeMARRAIS et al., Defendants, Cross-complainants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication. The portions directed to be published follow.

678

**COUNSEL**

Chern, Brenneman & Garcia and Gertrude D. Chern for Defendants, Cross-complainants and Appellants.

Nichols, Guthrie & Sims and Herb Fox for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**GILBERT, J.**—The real estate agency disclosure statute, Civil Code section 2374,[1] says nothing about a failure to comply. A statute without a remedy

---

[1]All further statutory references are to the Civil Code unless otherwise specified.

might as well be written in invisible ink. We conclude the common law provides a remedy for failure to comply with section 2374.

A real estate agent representing both a buyer and seller in a transaction must provide a disclosure statement to both buyer and seller. (§ 2374.) Subdivision (a) of that section requires the real estate agent seeking to list residential property for sale to provide the seller with the agency relationship disclosure form prior to entering into a listing agreement.

Here, an agent who represents a buyer interested in seller's property enters into a listing agreement with seller. The agent fails to provide the disclosure form to the seller prior to entering into the listing agreement. We hold that under these circumstances the listing agreement is voidable at seller's option.

We reverse. [[ ]]*

## FACTS

Leendert Huijers owned a nursery business in Huntington Park. He wished to relocate the business to Santa Barbara County. He sold his nursery in April 1987. The contract gave him until July 31, 1988, to find a replacement property to qualify for a tax-deferred real estate exchange. Until then he would continue to operate the Huntington Park nursery. The July closing date, however, would ultimately be extended to September.

After having looked at a number of properties, in July of 1988 Huijers retained Justine Larson, a real estate broker. Larson telephoned Gordon and George Ann DeMarrais, who owned a parcel of property in Lompoc. Part of the parcel contained a residence, and the remainder was used as a nursery. The DeMarraises told her they were willing to talk about selling their land, and they met with her on August 8.

At the August 8 meeting, Larson told the DeMarraises that she had a client who was interested in buying their property. The DeMarraises signed an exclusive right to sell listing agreement. The listing price was $325,000. The DeMarraises were willing to accept a note secured by a trust deed on the property as part of the purchase price. The price was determined solely by the DeMarraises.

Larson told them that under the agreement they would owe 6 percent commission if she found a buyer who would pay the listing price. Larson did

*See footnote, *ante*, page 676.

not provide the DeMarraises with an agency disclosure statement prior to or at the time the listing agreement was signed. (§ 2373 et seq.)

On August 13 Larson called the DeMarraises and told them her Huntington Park client would be making an offer within a week. On August 20, prior to having received any offer, the DeMarraises told Larson they wanted to increase the asking price to $375,000. Larson did not agree to do so, but replied that she would ask her father, who was also a real estate broker.

Huijers had been planning to offer $275,000. After he learned of the DeMarraises' desire to raise the asking price, he instructed Larson to prepare an offer that met the $325,000 listing price and terms.

Huijers, Larson and the DeMarraises met at the DeMarrais home on August 22. Huijers and Larson brought the proposed contract with them. Huijers told the DeMarraises that if they did not want to hear his offer at $325,000, he would leave. The DeMarraises decided to listen to the offer.

At one point early in the negotiations, one of the DeMarraises asked why they could not raise the price. Huijers responded it was his understanding of California law that once a broker has found a ready, willing and able buyer, she has done her job, and the DeMarraises would have to pay her commission.

The negotiations lasted for about seven to eight hours. At the end, the DeMarraises agreed to sign a contract. Upon signing, Gordon DeMarrais said, ". . . I have to pay the commission anyway."

[[ ]]*

It was only at the time of the signing of the purchase contract that the DeMarraises received the agency disclosure statement required to be given to them prior to signing the listing agreement. The purchase contract included a statement that Larson was acting as a dual agent for both buyer and seller.

The morning after the contract was signed, the DeMarraises' attorney called Huijers and Larson and told them the DeMarraises had rescinded.

---

*See footnote, *ante*, page 676.

Huijers filed a complaint against the DeMarraises for specific performance and damages. The DeMarraises cross-complained against Huijers and Larson for fraud, negligent misrepresentation, breach of fiduciary duty, rescission and declaratory relief.

After a nonjury trial, the court found Huijers' statement concerning Larson's right to a commission was a correct statement of law; at no time did Huijers or Larson make any misrepresentation in order to induce the DeMarraises to sign the purchase agreement; and the contract is valid and specific performance was the proper remedy. The trial court also awarded Huijers damages of $39,900 for tax liabilities incurred because of his inability to carry out a tax-deferred exchange, $36,400 for lost profits and $134,996.72 in attorney fees and costs.

DISCUSSION

I

■■■■■■ The DeMarraises contend Larson's failure to provide them with an agency relationship disclosure statement prior to entering into the listing agreement made the listing agreement voidable.[2] ■■ Thus, they argue, their signatures on the sales contract were obtained through the misrepresentation that they were liable for Larson's commission even if they did not sign the contract.

For residential real estate sales, a real estate agent is required by statute to make certain disclosures about the agent's duties to the parties and about which party or parties to the transaction the agent is representing. (§ 2373 et seq.[3])

Section 2374, subdivision (a), provides that "[t]he listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement." The disclosure is required to be made in the form set forth in

---

[2] " '. . . A voidable contract is one which may be rendered null at the option of one of the parties, but is not void until so rendered. . . .' " (*White Dragon Productions, Inc.* v. *Performance Guarantees, Inc.* (1987) 196 Cal.App.3d 163, 172 [241 Cal.Rptr. 745].)

[3] Huijers does not argue the statutes are inapplicable to mixed residential and commercial uses.

Moreover, Huijers intended use of the property does not determine the applicability of the statutes.

section 2375.[4] The form lists the duties of the seller's agent, the buyer's agent and advises that a real estate agent may represent both seller and buyer in a transaction. It also contains the warning that "[t]he above duties of the

---

[4]Section 2375 states:

"The disclosure form required by Section 2374 shall have this article, excluding this section, printed on the back, and on the front of the disclosure form the following shall appear:

## "DISCLOSURE REGARDING REAL ESTATE

## "AGENCY RELATIONSHIP

## "(As required by the Civil Code)

"When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## "SELLER'S AGENT

"A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
"To the Seller:
"(a) A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller.
"To the Buyer and the Seller:
"(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
"(b) A duty of honest and fair dealing and good faith.
"(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
"An agent is not obligated to reveal to either party any confidential information obtained from the other party which does not involve the affirmative duties set forth above.

## "BUYER'S AGENT

"A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
"To the Buyer:
"(a) A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer.
"To the Buyer and the Seller:
"(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
"(b) A duty of honest and fair dealing and good faith.
"(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential

agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests."

The form set forth in section 2375 gives buyers and sellers of real estate general information about a real estate agent's duties, and points out the fiduciary responsibility of the agent. Information about whether an agent represents both buyer and seller may not always be known prior to the seller signing the listing agreement. Section 2375.5[5] therefore requires the listing

---

information obtained from the other party which does not involve the affirmative duties set forth above.

### "AGENT REPRESENTING BOTH
### "SELLER AND BUYER

"A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

"In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

"(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer.

"(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

"In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

"The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

"Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.

"This disclosure form includes the provisions of Article 2.5 (commencing with Section 2373) of Chapter 2 of Title 9 of Part 4 of Division 3 of the Civil Code set forth on the reverse hereof. Read it carefully.

| "_____ | _____ |
| "Agent | Buyer/Seller (date) |
|  | "(Signature) |

| "_____ | _____ |
| "Associate Licensee (date) | Buyer/Seller (date) |
| "(Signature) | (Signature)" |

[5]Section 2375.5 states:

"(a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller and this relationship shall be confirmed in the contract to purchase and sell real property or in

agent to disclose "[a]s soon as practicable" whether the agent is representing the seller only or both the seller and buyer.

There is no dispute that Larson failed to provide the DeMarraises with the disclosure form required by section 2375 prior to entering into the listing agreement. Huijers contends, however, that Larson was in substantial compliance with the law by providing the disclosure form at the time the purchase contract was signed.

■ Substantial compliance with a statute is sufficient unless the intent of the statute can only be served by demanding strict compliance. (*ABBA Rubber Co.* v. *Seaquist* (1991) 235 Cal.App.3d 1, 12 [286 Cal.Rptr. 518].) Substantial compliance means " '. . . actual compliance in respect to the substance essential to every reasonable objective of the statute.' [Citation.]" (*Ibid.*)

■ The objective of a statute requiring a disclosure prior to signing the listing agreement is to allow the seller to make a more intelligent decision about whether to sign. For example, the property owner who is asked to sign a listing agreement because the broker has a buyer for the property may not fully comprehend that the broker intends to act as a dual agent. Because the seller pays the broker's commission, the seller may reasonably believe the broker has only the seller's best interest at heart and is working exclusively for the seller.

---

a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively.

"(b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller and this relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

"(c) The confirmation required by subdivisions (a) and (b) shall be in the following form:

"_____ is the agent of (check one):

  "(Name of Listing Agent)
"[ ] the seller exclusively; or
"[ ] both the buyer and seller.

"_____ is the agent of (check one):

"   (Name of Selling Agent if not the same as the Listing Agent)
"[ ] the buyer exclusively; or
"[ ] the seller exclusively; or
"[ ] both the buyer and seller.

"(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2374."

The disclosure form tells the property owner that a broker can act as a dual agent. Thus advised, the seller may wish to sell the property through his or her own agent or to seek independent advice on the price and terms of the listing.

The full measure of protection that the Legislature intended to provide to the seller cannot be achieved if the listing agent fails to provide the disclosure form prior to entering into the listing agreement. Because a reasonable objective of the statute is to give the seller information prior to signing the listing agreement, providing a disclosure form after the seller signs the agreement is not substantial compliance.

Huijers's reliance on subdivision (b) of section 2374 is misplaced. In contrast to subdivision (a), which requires a "listing agent" to provide the seller with a disclosure prior to entering into the listing agreement, subdivision (b) requires a "selling agent" to provide the seller with a disclosure form "as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a)." The "selling agent" is defined as "a listing agent who acts alone, or an agent who acts in cooperation with a listing agent . . . ." (§ 2373, subd. (n).)

We find nothing in subdivision (b) of section 2374 that relieves a selling agent who is also a listing agent from complying with subdivision (a). Subdivision (b) is merely a recognition that not all agents are listing agents as Larson was. Some selling agents are cooperating brokers, and may not be involved in the transaction until after the listing agreement has been signed.

There is no doubt Larson failed to substantially comply with the disclosure statutes. The next question is what are the DeMarraises' remedies?

Although there is no mention of any specific remedies in the disclosure act, section 2382 provides: "Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure."

Thus, the legislative scheme added statutory duties to the common law duties of disclosure, while leaving common law remedies for failure to disclose intact.

The remedy for a real estate agent's breach of a duty to disclose a dual representation of both buyer and seller is that the principal is not liable to

pay the agent's commission, and the principal may avoid the transaction. (*McConnell* v. *Cowan* (1955) 44 Cal.2d 805, 809 [285 P.2d 261].) " ' ". . . It makes no difference that the principal was not in fact injured, or that the agent intended no wrong or that the other party acted in good faith . . . ." ' " (*Id.*, at pp. 809-810.)

Contrary to the position taken by the dissent, it is not enough to disclose only the fact of dual representation. The agent must also disclose all facts which would reasonably affect the judgment of each party in permitting the dual representation. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency & Employment, § 56, p. 64.) We read section 2375 as a legislative determination that the information required to be disclosed alerts the parties to the potentially harmful consequences of dual representation, so they can make an informed judgment.

Nor do we believe our Legislature intended the remedy for violation of the statute to be confined to discipline by the Commissioner of Real Estate. Such a statute providing exclusively for discipline against a licensee would ordinarily be found in the Business and Professions Code and not the Civil Code. For example, Business and Professions Code section 10176, subdivision (d) provides that the commissioner may discipline a real estate licensee for "[a]cting for more than one party in a transaction without the knowledge and consent of all parties thereto."

The failure to disclose prior to entering into the listing agreement, relieved the DeMarraises from the obligation to pay their agent's commission. This failure to disclose, however, does not in itself relieve the DeMarraises from their obligation under the purchase contract. That is because the disclosure statement was ultimately given to them just before they signed the purchase contract. Nevertheless, they may be entitled to rescission of the purchase contract. Huijers's statement that the DeMarraises would have to pay Larson's commission was incorrect. Because the trial court erroneously found that Huijers's statement was correct, we must reverse for further findings on whether under the circumstances the misstatement constituted grounds for rescission.

We do not mean to say that the failure to provide a disclosure form will always result in a voidable listing agreement. A seller, for example, who has sufficient knowledge concerning the information contained in the disclosure form may be held to the listing agreement even though he or she did not receive the disclosure form.

There is no evidence here, however, that the DeMarraises had such knowledge. Larson's statement that she represented a client who was interested in buying the DeMarraises' property does not disclose all the information mandated by section 2375. Nor is the trial court's finding that the DeMarraises had "considerable knowledge and experience with respect to real estate and other transactions" equivalent to a finding that the DeMarraises had sufficient knowledge to make the disclosure form superfluous.

[[ ]]*

The judgment is reversed. Costs on appeal are awarded to appellants.

Stone (S. J.), P. J., concurred.

**YEGAN, J.**—I respectfully dissent. Justine Larson, a real estate broker, was retained by Leendert P. Huijers to find a nursery which would qualify for a tax deferred exchange for his existing nursery in Huntington Park. Larson located a property, owned by Gordon and George Anne DeMarrais, which had both a nursery and a residence. Larson expressly told the DeMarraises that she had a "client" who was interested in buying their property. The DeMarraises *alone* set the listing price at $325,000. Larson told them that if she brought them a buyer at that price, she would earn a 6 percent commission. The DeMarraises did not object and signed a written contract listing the property on these terms. Larson, however, did not provide a written dual agency disclosure statement.[1]

Thereafter, Larson advised the DeMarraises that her "client" would be making an offer. Thus, she had already begun to perform her contract with the DeMarraises. Thereafter, the DeMarraises indicated that they wanted to raise the listing price to $375,000. Larson did not agree to modify the written contract that she had with them. (Civ. Code, § 2381.)[2] When Larson told Huijers that the DeMarraises wanted to raise the price, Huijers, who had

---

*See footnote, *ante*, page 676

[1]The majority opinion is initially premised on the theoretical application of Civil Code section 2373 et seq. This section applies to transactions for the sale of real property ". . . improved with one to four dwelling units . . . ." (§ 2373, subd. (j).) Here the property had one dwelling but there is little doubt that the true object of the sale was the nursery. In *Smith v. Rickard* (1988) 205 Cal.App.3d 1354 [254 Cal.Rptr. 633], we previously held that ". . . the presence of a residence on the commercial property does not transform the property into residential property" (*id.* at p. 1363) for purposes of the rule announced in *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383, 46 A.L.R.4th 521]. (See also Civ. Code, § 2079.) A strong argument can be made that Civil Code section 2373 et seq., does not apply here at all.

[2]Civil Code section 2381 provides: "A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of

planned to offer $275,000, told Larson to prepare a full price offer of $325,000.

When Huijers, Larson, and the Demarraises met, Huijers expressly told the DeMarraises that if they did not want to hear his $325,000 offer, he would leave. The Demarraises told Huijers to stay and the $325,000 full price offer was presented. An eight-hour bargaining session ensued. The DeMarraises asked why they couldn't raise the price. Huijers said that it was his understanding of California law that once a broker brought a willing and able buyer at the listing price, the seller was obligated to pay a commission whether the sale was consummated or not.

The DeMarraises abandoned the $375,000 price and accepted Huijers's offer. In doing so, Mr. Demarrais said, ". . . I have to pay the commission anyway." Larson then provided the DeMarraises with the written dual agency disclosure statement.

Long before the written agency disclosure statutes were enacted (Civ. Code, § 2373 et seq.), the California Supreme Court indicated: " '[W]here an agent has assumed to act in a double capacity, a principal who has no knowledge of such dual representation . . . may avoid the transaction. . . . Such conduct is a fraud upon his [the agent's] principal . . . .'" (*McConnell* v. *Cowan* (1955) 44 Cal.2d 805, 809 [285 P.2d 261].)

Relying on *McConnell* v. *Cowan, supra,* the majority hold that failure to provide the written disclosure statement relieves the seller from the obligation to pay the commission. The effect of this holding, in the majority of cases, works an unnecessary modification of the Statute of Frauds. (Civ. Code, § 1624, subds. (c) and (d).)

The salutory rule announced in *McConnell* v. *Cowan, supra,* does not compel reversal in this case. Here, Larson disclosed her dual agency relationship to the DeMarraises, albeit not in the written form required. On at least two occasions, she referred to her "client" who wanted to purchase the property.

The trial court expressly found that Larson committed no fraud and that she represented ". . . the interests of both plaintiff and defendants in a fair and neutral manner." The DeMarraises, experienced in real estate transactions, knew that Larson was not their exclusive agent. The trial court expressly found that ". . . her role as a dual agent was fully disclosed to Defendants." Substantial evidence supports this determination.

the act which is the object of the agency with the written consent of the parties to the agency relationship."

There is a causation problem in the majority's analysis. The majority indicate that the failure to make the written disclosure relieved the DeMarraises of the duty to pay the commission and Huijers's opinion to the contrary may have been the cause of the DeMarraises entering into the contract. Not so. The trial court expressly found that the DeMarraises knew of the dual agency, alone set the initial price of $325,000, and after an eight-hour bargaining session, agreed to this price as well as other terms and conditions.[3] Huijers initially indicated he would leave if the DeMarraises wanted him to do so. After the marathon bargaining session, Huijers suggested that they sleep on it and consult an attorney. In signing the real estate contract, Mr. DeMarrais said that he had planned to sell the property and ". . . that it was basically a fairly good deal."

The trial court impliedly, if not expressly, found that the failure to provide the written disclosure did not cause the DeMarraises to sell for the $325,000 price. This finding is supported by substantial evidence and the reasonable inferences which can and should be drawn therefrom. The DeMarraises have not demonstrated to the contrary as a matter of law. It is a question of fact whether failure to disclose is the proximate cause of damages. (*Montoya* v. *McLeod* (1985) 176 Cal.App.3d 57, 65 [221 Cal.Rptr. 353].)

If a broker fails to make a written disclosure of dual agency, the seller must still prove that he would not have entered into the transaction but for the failure to make the written disclosure. Where, as here, he does not do so, he must sell the property.

Inherent in this analysis is my disagreement with the majority that failure to provide the written disclosure of dual agency discharges the seller's duty to pay a real estate commission. No one coerced the DeMarraises into signing the listing agreement at the $325,000 price and it is speculative whether they would have conducted themselves differently had the written disclosure been made. The DeMarraises could not unilaterally change the listing agreement. (Civ. Code, § 2381.)

"[I]f a broker produces a buyer on terms set out in his listing agreement, and the seller refuses to perform, the broker may recover his commission on his contract with the seller." (*Seck* v. *Foulks* (1972) 25 Cal.App.3d 556, 569 [102 Cal.Rptr. 170].) In the absence of fraud, failure to provide written disclosure of dual agency should not change the rule announced in *Seck*, *supra*. Not every violation of a statute creates a private cause of action.

---

[3]The price was reduced to $315,000 because of a $10,000 lien on the property.

(*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 204 [250 Cal.Rptr. 116, 758 P.2d 58].) A fortiori, violation of a statute does not inexorably create a defense to a civil action.[4]

[[ ]]*

This case was bitterly contested from the outset and the attorney fees spent thereon are a testament to the fact that an early settlement would have been in everyone's best interest. The trial court issued a 29-page statement of decision which exhaustively and fairly decided the dispute. The judgment should be affirmed in its entirety.

Respondent's petition for review by the Supreme Court was denied March 11, 1993. Lucas, C. J., Mosk, J. and Panelli, J., were of the opinion that the petition should be granted.

---

[4]The remedy for violation of the instant statute is not written in invisible ink. The failure of the real estate broker to comply with the requirements of Civil Code section 2373 et seq. may subject the broker to discipline by the Commissioner of Real Estate. (Bus. & Prof. Code, §§ 10175, 10176, subd. (d).)

*See footnote, *ante*, page 676.