152 Cal.App.2d 180 (1957)
MARY JOHNSTON, Respondent,
v.
CHARLES L. SEARGEANTS et al., Appellants.
Civ. No. 22063. 
California Court of Appeals. Second Dist., Div. One. 
July 1, 1957.
 Moidel, Moidel, Moidel & Smith Associates for Appellants.
 Weber & Carroll for Respondent.
 FOURT, J.
 This is an appeal from a judgment in favor of plaintiff in an action for rescission of a contract for the purchase and sale of real property, and for damages.
 On or about October 8, 1954, plaintiff, as buyer, and defendant Charles L. Seargeants, as seller, entered into a written agreement for the purchase and sale of certain described property in the city of Los Angeles. Defendants Jean Gordon and Nellie Frey were employed as real estate brokers by Mr. Seargeants to sell the property in question. On October 12, 1954, pursuant to the agreement, a 90-day escrow was entered into between the buyer and seller with the defendant Continental Escrow Company. The escrow instructions contained the following provision: "Seller will deposit in this escrow for the buyer, a termite report of a recent date by a state licensed pest control operator showing the above described property to be free and clear of all visible evidence of termite, dry rot and fungi. Any corrective work to be done at the seller's expense."
 On February 16, 1955, plaintiff served upon defendants a written "Notice of Rescission and Cancellation and Termination of Offer" in which it was stated that "my offer to purchase the premises known as 2020 Miramar, Los Angeles, California, pursuant to which offer an escrow agreement was entered into by me at the Continental Escrow Co., is of this day revoked, terminated and rescinded because of failure of the seller to perform according to his agreements, in particular in reference to, among other things, failure to correct termite, dry rot and fungi infestation existing on said premises within the terms and time limit of my offer." The notice also contained a demand on the escrow company for the return of all documents, monies and papers belonging to respondent. At the time plaintiff served the notice of rescission she had deposited in the escrow a trust deed and note, and three checks the aggregate amount of which was $3,589.50. The seller had deposited in the escrow a termite clearance dated August 24, 1954.
 In her complaint, plaintiff alleged that defendants failed to perform according to their agreements and in particular to make the premises "clear of active, visible infestation by termites, fungi and dry rot." It was further alleged that "said *182 premises is infested by termites and has been damaged by termites, fungi and dry rot to such an extent that the cost of repairs and rehabilitation of said premises exceeds the sum of $1800.00, the reasonable value thereof; that at no time during the time limit of said offer and contract to purchase did the defendants tender to plaintiff the premises in question free and clear of termites, dry rot and fungi." In her second cause of action plaintiff alleged that she was induced to enter into the contract in question by the false representations of defendants Jean Gordon and Nellie Frey that the premises were free from damage by termites, dry rot and fungi, and further that the premises could qualify for license by city, county and state authorities for use as a sanitarium and as a convalescent home; that such representations were made with knowledge of their falsity and with the intent to induce respondent to enter into a contract for the purchase of the property.
 Defendants Charles L. Seargeants, Jean Gordon and Nellie Frey filed an answer in which they alleged in substance that between the date the escrow was opened and the date plaintiff served her notice of rescission, they had caused to be deposited in the escrow a termite report by a state licensed pest control operator showing the property to be free and clear of all visible evidence of termite, dry rot and fungi. The allegations of false representations contained in the second cause of action of plaintiff's complaint were denied. Defendant Charles L. Seargeants also filed a cross- complaint for specific performance and damages.
 The trial court found that plaintiff and defendant Charles L. Seargeants entered into a written contract for the purchase and sale of the property in question, said contract consisting of a deposit-receipt contract dated October 8, 1954, and escrow instructions dated October 12, 1954; that by the terms of the contract defendant Charles L. Seargeants covenanted and agreed to deposit in escrow for the buyer a termite report of a recent date by a state-licensed pest control operator showing the property to be free and clear of all visible evidence of termites, dry rot and fungi and further, that any corrective work was to be done at the seller's expense; that the term of the escrow was for a period of 90 days from October 12, 1954.
 The court further found that the seller was under a duty pursuant to the contract of purchase and sale to make the premises free and clear of visible evidence of termites, fungi and dry rot; that defendant Charles L. Seargeants failed to *183 perform such duty and that it was not true that he had performed all the covenants agreed by him to be performed under the contract; that for a period of more than six months prior to February 16, 1955, the premises were infested with termites, dry rot and fungi which were visible and subject to discovery on inspection.
 The court also found that Jean Gordon and Nellie Frey were real estate brokers; that during the negotiations for the sale of the property they were agents of Charles L. Seargeants and were authorized to and did act on his behalf; that Nellie Frey was employed by and acted under the direction of Jean Gordon in the sale of the premises; that Jean Gordon and Nellie Frey represented to the plaintiff that the premises were in excellent structural condition and were free from damage and infestation by termites, dry rot and fungi and were suitable for use as a sanitarium and a convalescent home in the event plaintiff would obtain a modification of existing zoning laws of the city of Los Angeles; that each and all of said representations were false and were made with the intent by defendants Jean Gordon and Nellie Frey to induce plaintiff to enter into a contract of purchase and sale with Charles L. Seargeants for the premises; that plaintiff relied on said misrepresentations and was thereby induced to enter into the contract of purchase and sale.
 Appellants contend there is no evidence to support the finding that:
 (1) Nellie Frey was employed by and acted under the direction of Jean Gordon in the sale of the premises;
 (2) The seller was under a duty pursuant to the contract of purchase and sale to make the premises free and clear of visible evidence of termites, fungi and dry rot and that the seller failed to perform such duty;
 (3) The seller did not perform all the covenants agreed by him to be performed in the contract of purchase and sale;
 (4) Nellie Frey represented to plaintiff that the premises were in excellent structural condition, free from damage and infestation by termites and were suitable for use as a sanitarium and a convalescent home in the event a modification of existing zoning laws were obtained; and
 (5) Jean Gordon represented to plaintiff that the premises were free from damage and infestation by termites, fungi and dry rot.
 [1] It is admitted in the answer that Jean Gordon and Nellie Frey were employed as real estate brokers by defendant *184 Charles L. Seargeants to sell the property. With respect to her participation in the sale, Nellie Frey testified as follows:
 "Q. Were you acquainted with the seller at that time? A. No."
 "Q. In the matter of showing this property to Miss Johnston, did you taken an active part in that showing? A. No, it was not my listing. I was cooperating with the other office."
 "Q. That is, with Jean Gordon? A. Right."
 "Q. And did Jean Gordon actually take over the showing of the property to her? A. Well, that's customary when the other broker has the listing, yes. * * *"
 "Q. During the time that this building was shown to Mrs. Johnston, did you participate in the conversation in describing the building to her? A. I did."
 Nellie Frey further testified that the commission was to be divided between her and Jean Gordon.
 The foregoing is sufficient to support a finding that defendant Nellie Frey was the agent of defendant Charles L. Seargeants, and that she acted jointly with defendant Jean Gordon in the sale of the premises to plaintiff.
 With respect to the finding that it was the duty of the seller under the contract of purchase and sale to make the premises free and clear of visible evidence of termites, fungi and dry rot, and that the seller did not perform all the covenants agreed by him to be performed, appellants argue that the seller was under no such duty; that his only duty in that respect was to deposit in the escrow for the buyer a termite report of a recent date by a state licensed pest control operator showing the property to be free and clear of visible evidence of termites, dry rot and fungi; that the escrow file, which was introduced into evidence, contains such a termite report dated August 24, 1954, and that "the only issue then is whether a report 45 days beforehand is 'of recent date.' "
 [2] The contract provided not only for the deposit by the seller in the escrow of a termite clearance of recent date, but also that "Any corrective work to be done at the seller's expense." The obvious purpose in including the foregoing provisions in the contract was so that plaintiff would have assurance that the property she was purchasing was, at that time, free and clear of all visible evidence of termites, dry rot and fungi. It may also be assumed that the seller would not expect to obtain such a termite clearance unless the property were in fact free from visible infestation, and unless *185 and until the seller deposited the termite clearance in the escrow, plaintiff was under no obligation to accept title to the property. It follows, therefore, that if the premises were not free and clear of visible evidence of termites, the seller was under an obligation to pay for any corrective work to put them in such condition or the buyer was entitled to rescind the contract at the expiration of the 90-day escrow period.
 [3] The trial court in finding that the seller did not perform all the covenants agreed by him to be performed in the contract of purchase and sale impliedly found that in specifying that the seller would deposit a termite report of recent date in the escrow the parties did not contract on the basis of the termite clearance dated August 24, 1954, which was prior to the date they entered into the contract of purchase and sale. This finding is supported by the following testimony of defendant Jean Gordon:
 "Q. At the time you showed this property to Miss Johnston, Miss Gordon, did you make any statement to her about the termite condition of the building? * * *"
 "A. As I recall, the statement I made to her was there had been a recent termite clearance, but we would ask for one during the term of her escrow if there were an escrow, which was our custom. * * *"
 "Q. In other words, you told her that you would ask for a termite clearance during the term of her escrow; is that correct? A. That is correct."
 Appellants refer to another termite clearance dated February 2, 1955, contained in the escrow file which is in evidence, stating that "if for any reason, the termite report of August 24, 1954 was not of recent date, certainly the report of February 2, 1955 filed with the escrow holder prior to the attempted rescission of February 15, 1955 was of 'recent date' and within the requirements of the escrow instructions."
 At the time the escrow file was introduced into evidence, counsel for plaintiff stipulated that with the exception of the termite report dated February 2, 1955, all the papers contained in the file were received in the normal course of business and were genuine to the extent that a custodian could testify to their being genuine. Objection to the termite report was made upon the ground that it was not marked *186 with any date of receipt in the escrow. Mr. Crain, the manager of the Continental Escrow Company, testified in substance that in the absence of a covering letter or a date of receipt stamp, it was impossible to fix the date that a document was received by the escrow company and further, that it was the custom of the escrow company to mark documents coming into its files with a date stamp. Defendant Jean Gordon testified that she had never seen the termite report dated February 2, 1955, and had never had it in her possession; that she did not know who placed it in the escrow. Defendant Charles L. Seargeants testified that if Miss Gordon had not seen the report, he had not seen it and that he had nothing to do with filing the report in the escrow. There is no evidence as to who filed the report in the escrow or as to the date it was filed therein, whether before or after plaintiff served her notice of rescission.
 The court found that the representations as to the structural condition of the premises and their suitability as a convalescent home were made by Jean Gordon and Nellie Frey. As to Jean Gordon, appellants challenge only the finding that she represented to the plaintiff that the premises were free from damage and infestation by fungi and dry rot. The finding is supported by the testimony of Jean Gordon that she told plaintiff there had been a recent termite clearance but she would ask for one during the term of the escrow and the following testimony of plaintiff: "She [Jean Gordon] pointed out that it was a very unusually nice large basement, very high ceiling, cement floor, very light. And she said that could be used for commercial storage, or, oh, as an entertainment room, meetings and things. And she pointed out the fact that this was unusually well built, that this was the old Gilmore oil people's family home. And it was built--been built a long time when things were really built thoroughly. And she pointed to the construction, the heavy timber and the thick walls, and said she knew that construction, and this was a wonderfully well built house, and it was in excellent condition, and she pointed to the fact that the floor was dry; there wasn't any water in it, and it was in excellent condition, and I didn't have to worry about it; they had it all checked and everything was in good condition."
 "And I believe she mentioned something around $400 or so that had been spent, that nothing was to be done."
 "Mr. Weber: I didn't hear that last. A. I think she *187 mentioned somewhere around $400 had been spent on the place getting it--termites and getting it in good condition."
 [4] As to the finding of the trial court that the representations were made by Nellie Frey as well as Jean Gordon, since Nellie Frey and Jean Gordon were jointly acting as the agents of defendant Charles L. Seargeants in the sale of the property to plaintiff, any representation made by either of them was the representation of both.
 At the trial it was stipulated between the parties that "Continental Escrow Company shall have judgment against plaintiff and defendant Charles L. Seargeants, jointly and severally, in the sum of $309.50 to be satisfied out of funds presently in possession of Continental Escrow Company and that judgment shall provide for escrow charges and expenses other than attorney fees and court costs in the sum of $199. to be assessed equally to the plaintiff and Charles L. Seargeants and that $110.50 as and for attorney fees and court costs to be assessed against the losing party to this action. This stipulation applies only to the expenses and charges of Continental Escrow Company."
 In the judgment, the court granted plaintiff a rescission of the contract and ordered that defendant Charles L. Seargeants take nothing by reason of his cross-complaint. Plaintiff was awarded damages consisting of interest at the rate of 7 per cent on the sum of $3,589.50 from February 17, 1955, against defendant Charles L. Seargeants. It was further ordered that plaintiff recover her costs of suit against defendants Charles L. Seargeants, Jean Gordon and Nellie Frey and that "pursuant to stipulation entered into in court by plaintiff and defendants that Continental Escrow Co. shall have judgment against plaintiff, Mary Johnston, and defendants, Charles L. Seargeants, Ruth Baltz, also known as Jean Gordon, and Nellie Frey, jointly and severally for the sum of $309.50 and that said Continental Escrow Co. shall have a lien on monies belonging to plaintiff, Mary Johnston, in said amount, which funds are now in the possession of Continental Escrow Co."
 Appellants assert that since the stipulation between the parties was that the Continental Escrow Company have judgment against plaintiff and defendant Charles L. Seargeants only, that part of the order which was pursuant to such stipulation erroneously gave judgment against Nellie Frey and Jean Gordon. The record establishes that appellants are correct in this contention. *188
 Finally, appellants contend that the trial court erred as a matter of law in that (1) the judgment for rescission is not supported by the findings; (2) "the judgment against Nellie Frey and/or Jean Gordon and/or Seargeants is not supported by the findings"; (3) "in failing to award Seargeants a judgment as prayed under the cross-complaint" and (4) in admitting into evidence the termite report of plaintiff's termite operators and their respective testimony, and the Los Angeles City Ordinance. There is no merit in these contentions. The findings of the trial court are supported by the evidence and sustain a judgment for rescission.
 That part of the judgment which is pursuant to stipulation entered into in court by plaintiff and defendants is modified to read as follows:
 "It Is Further Ordered, Adjudged and Decreed, pursuant to stipulation entered into in court by plaintiff and defendants that Continental Escrow Co. shall have judgment against plaintiff, Mary Johnston, and defendant, Charles L. Seargeants, jointly and severally for the sum of $309.50 and that said Continental Escrow Co. shall have a lien on monies belonging to plaintiff, Mary Johnston, in said amount, which funds are now in the possession of Continental Escrow Co."
 "It Is Further Ordered, Adjudged and Decreed that plaintiff, Mary Johnston, be and she hereby is awarded judgment against defendant Charles L. Seargeants in the sum of $210.00 as and for escrow costs of said Continental Escrow Co. as provided for in the above referred to stipulation entered into by the parties."
 As modified the judgment is affirmed, respondent to recover costs on appeal.
 White, P. J., and Doran, J., concurred.