[Civ. No. 22742.   Second Dist., Div. Two.   Mar. 12, 1958.]

BERNARD N. SMITH et al., Appellants, v. JACK V. HOWARD et al., Respondents.

Downey A. Grosenbaugh for Appellants.

Harold W. Svenson and Trent G. Anderson, Jr., for Respondents.

FOX, P. J.—This is an action for damages in three counts. The plaintiffs are: (1) a prospective purchaser of real property—Bernard Smith; and (2) a real estate broker—Vincent Reeves. There are several defendants, the principal of whom is Jack Howard, a real estate broker.

The first cause of action is stated by both plaintiffs. This cause of action claims damages arising from the breach of an alleged agency relationship between plaintiffs and defendant Howard, and damages arising out of a conspiracy among all defendants.

The second action is stated only by plaintiff Smith. It repeats the allegations of the first action and claims damages arising from defendant Howard's negligent performance of his duties as agent.

The third cause of action is stated only by plaintiff Reeves. It repeats the allegations of the first action and claims that Reeves was deprived of a real estate commission because of the acts of defendants.

At the trial the court (sitting without a jury) directed the order of proof to the question of the agency relationship between defendant Jack Howard and plaintiffs. The court did not hear the complete evidence on any other question. After hearing the evidence on the agency question, the court ruled in favor of defendants. The court concluded that having found for defendants on this one issue, it would be unnecessary to find on any other issue. Accordingly, the court rendered judgment for defendants. Both plaintiffs have appealed.

The following is a brief summary of the facts in this case: On January 26, 1955, Jack Howard told several real estate brokers that he had received a call from defendant W. Ross Campbell Company informing him that certain property was being offered for sale at a price of $35,000 with $5,000 down subject to a first trust deed of $12,000 and a second trust deed for the balance. The next morning Jack Howard also told his mother about the property and she said she might be interested in buying it. Later that day (January 27) Reeves and Smith met Jack Howard at the property and Howard showed them through the house. Reeves described Howard as the broker

representing the W. Ross Campbell Company, who told him about the house. Thereafter, all three left the house and stood in the street, at which time Reeves told Howard that he thought Smith would take the house. Reeves then told Howard to go to his (Howard's) home, which was two doors away, and wait while he (Reeves) spoke to Smith and wrote up the deal. About 15 minutes later Reeves came to Howard with a deposit receipt naming Reeves as broker, and a check for $1,000 to the order of the Vincent Reeves Company. Howard then called the Campbell Company and told defendant Wyatt, who was his contact at that office, that he had an offer on the basis that Wyatt had suggested to him the previous day. He read Wyatt the terms stated on the deposit receipt and told Wyatt he would bring the offer to the office.

A discussion occurred between Reeves and Howard about commission and Howard stated he would attempt to negotiate a commission division of 40 percent to the W. Ross Campbell Company, 40 percent to Reeves, and 20 percent to Howard, which he stated he was willing to accept because he felt he had the smallest part in the deal.

Later Jack Howard spoke with his mother and she said she wanted to buy the property. He told her about his dealings with Reeves and Smith and said he had a duty to perform and had to deliver their offer. He said she could go ahead and make an offer if she wished but he could have nothing to do with it. Thereafter he took the check and deposit receipt to Mr. Wyatt, arriving at about 2:30 p.m. on the afternoon of January 27, and told him that Mr. Smith had a house for sale and could raise additional cash for a higher down payment "if it was important to the deal." Wyatt then told Jack Howard that Mrs. Howard had telephoned and made an offer on the property. Howard returned home and later told Reeves that another offer had been made, but did not disclose that the offer was from his mother because of the embarrassing position he was in as go-between for Reeves' client. Howard gave the deposit receipt and check back to Reeves, explaining that Wyatt had told him to hold the check and the offer since the owner had not accepted either offer. Howard told Reeves that there was nothing he could do, but Reeves could call Wyatt himself. Thereafter Reeves kept in contact with the W. Ross Campbell Company. It does not appear that Reeves ever made any statement to Wyatt that he could make a better offer or that Smith would pay more cash down.

Mrs. Richardson, the owner of the property, testified that

she told the W. Ross Campbell Company that she wanted to sell the property, but did not sign any papers nor state any terms nor execute any agency agreement. She merely set a price of $35,000. She was then called concerning an offer of $5,000 down with a first trust deed of $12,000 and a second trust deed of $18,000. She refused because she was not interested in taking a second trust deed in any event. She was later called concerning Mrs. Howard's offer and was interested because no second trust deed was involved and the security offered was excellent, even though the cash down payment was less. Mrs. Richardson testified that she would rather have income than cash down, but she would never accept a second trust deed. When she came to the W. Ross Campbell Company office on January 31, she discussed only the offer by Mrs. Howard because she was still not interested in the other one, which involved a second trust deed. She accepted the Howard offer and signed the escrow papers that same day.

Plaintiffs' principal contention on this appeal is that the evidence established as a matter of law that defendant Jack Howard was their agent or subagent. This contention is without merit since there is ample evidence in the record to support the contrary conclusion of the trial court. The difference between a middleman and an agent is explained in *King* v. *Reed,* 24 Cal.App. 229 [141 P. 41]. ▪ The court there stated at page 235 (quoting from *Langford* v. *Issenhuth,* 28 S.D. 451 [134 N.W. 889]) : "A middleman is a broker whose duties are limited by his contract to finding and procuring a purchaser able, willing and ready to accept his client's terms or to effect a transaction with his client in any terms satisfactory to both, the term 'middleman' being merely descriptive of the nature of the contract of employment, he being in no fiduciary relation to his principal nor under any obligation not to receive compensation from the opposite party to the transaction, while a broker [who is an agent], in addition to the duties of 'middleman,' is employed to use discretionary authority for the benefit of his employer and to act for his best interests. . . ." (See also *Carothers* v. *Caine,* 38 Cal.App. 71, 74 [175 P. 478].)

▪ In *Anderson* v. *Thacher,* 76 Cal.App.2d 50 [172 P.2d 533], the court stated (p. 67) : "A broker acts as middleman when his duty is simply to bring together two or more people who desire to exchange their property and whose entire duty is performed when he has brought the respective parties together. In such a case the broker is in no sense representing

conflicting interests. He has nothing whatever to do with the trade. Under his contract . . . advice and assistance . . . [are] not called for. Therefore he is not an agent in the strict sense of the word.''

■ Applying the foregoing principles to the case at bar, it is clear that the evidence is sufficient to support a finding that defendant Howard's relationship with Smith was that of middleman and prospective purchaser rather than that of agent and principal,[1] and that Howard was not the agent of Reeves. Howard was introduced to Smith by Reeves as the representative of the W. Ross Campbell Company which was supposedly listing the property in question for sale (the owner had never signed a listing agreement with any broker). Howard was not present when Reeves negotiated with Smith concerning an offer on the property. Reeves alone prepared the deposit receipt and obtained the check from Smith; Howard's name appears on neither. Howard agreed to accept only 20 percent of the commission because of his small part in the transaction. All these facts lend substantial support to the trial court's conclusion that Howard was not the agent of either plaintiff.

■ It is true that Howard had undertaken a duty to deliver Smith's offer to the W. Ross Campbell Company office on the afternoon of January 27, 1955. But that act was purely mechanical and clothed Howard with no discretion as would be necessary for him to be constituted an agent. Plaintiffs argue that Howard was given the authority to make a higher offer on behalf of Smith. The evidence does not support that conclusion. Howard was instructed to inform the W. Ross Campbell Company that Smith could raise money for a higher down payment if it was necessary in order to consummate the sale. Howard so informed Wyatt when he delivered the check and deposit receipt. But it does not appear that Howard was given any power to make a better offer for Smith.

The above facts and reasoning apply equally well to plaintiff Reeves. The evidence supports the conclusion, and the court found,[2] that Reeves delegated to Howard only the power

---

[1] The court found that ''it is not true that the defendant Jack V. Howard was the agent or broker for the plaintiff Bernard M. Smith in any respect or for any purpose.''

[2] The court's finding is as follows: ''It is true that Jack V. Howard orally agreed with the plaintiff Vincent R. Reeves to take said deposit receipt and check to the defendant W. Ross Campbell Co., and that he was clothed with no discretion and had no duties or obligations other than the duty to deliver said deposit receipt and check to the defendant W. Ross Campbell Co.''

to deliver the offer which Reeves had obtained from his client. Since Howard was given no discretionary authority to exercise for the benefit of plaintiffs, he was not their agent. (*Carothers* v. *Caine, supra; King* v. *Reed, supra.*) He was therefore not in any fiduciary relationship toward them and was not under any legal duty to inform them that the other offer on the property came from his own mother. The cases upon which plaintiffs rely to support their contention that even a middleman is in a fiduciary relationship with his client are not in point; all of them involved situations where an agency relationship existed.

The difficulty with plaintiffs' argument is that they would have this court reweigh the evidence. This we are not permitted to do. (*People* v. *Gould,* 111 Cal.App.2d 1, 8 [243 P.2d 809].) The evidence upon which plaintiffs most heavily rely consists of their own testimony. ■ The trier of fact, in passing upon the credibility of a witness, is entitled to consider his interest in the result of the case. (*Hamilton* v. *Abadjian,* 30 Cal.2d 49, 53 [179 P.2d 804] ; *Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d 788].) Plaintiffs are not entitled to a reversal simply because the trial court did not place full reliance on their testimony alone, especially since there is other testimony which supports the court's findings.

■ In addition to the absence of any agency relationship, there is another compelling reason why the plaintiffs in this case should not be permitted to recover. It appears that there was no causal relationship between defendants' alleged acts (or omissions) and the injury of which plaintiffs complain. The alleged damage sustained by each plaintiff is based upon the fact that the property in question was sold to Howard's mother instead of Smith (Reeves alleges that he was deprived of the brokerage commission of $875 and Smith alleges that the fair market value of the property was $45,000 so that he was damaged in the sum of $10,000). However, it appears conclusively from the testimony of Mrs. Richardson, the owner of the property, that defendants' alleged acts had no connection with her decision to sell the property to Mrs. Howard. Mrs. Richardson's testimony indicated that she was informed of the Smith offer before she ever heard about the offer from Mrs. Howard. She turned down the Smith offer because she would not accept a second trust deed under any circumstances. She was interested in the offer by Mrs. Howard because of the excellent security which was involved. She stated specifically that she was more interested in a steady

income than in a large cash down payment. The fact that Smith might have offered more money down would therefore not have affected her decision. Mrs. Richardson was asked on cross-examination whether she would have accepted an offer involving full payment in cash more readily than she would have accepted Mrs. Howard's offer. She answered that she "might have been inclined" to do so. But that was not the offer which Smith made.[3] It is thus clear that Mrs. Richardson would not have accepted Smith's offer in any event since it involved a second trust deed. The alleged acts of defendants were therefore not the proximate cause of plaintiff's failure to successfully negotiate a purchase of the property. It is elementary that a plaintiff will not be permitted to recover from a defendant whose alleged acts, however wrongful, are not the proximate cause of the injury suffered. The judgment must therefore be affirmed.

In light of the foregoing discussion, it is unnecessary for us to consider plaintiffs' charge of conspiracy, the claim of joint venture and the other points raised.

The judgment is affirmed.

Herndon, J., and Kincaid, J. pro tem.,* concurred.

---

[3]The offer which Smith made, as evidenced by the deposit receipt, was as follows:

$1,000 as a deposit on the full purchase price of $35,000; $4,000 to be paid into escrow; and Smith was to assume a first trust deed of approximately $12,000 and a second trust deed payable 1 per cent per month or more, with 5 per cent interest on the $18,000 balance.

*Assigned by Chairman of Judicial Council.