[Civ. No. 25266. First Dist., Div. Two. Sept. 22, 1969.]

DOROTHY LEITZ HALE, Plaintiff, Cross-defendant and Appellant, v. HOMER R. WOLFSEN et al., Defendants, Cross-complainants and Respondents.

Weingarten & McGinty and Saul M. Weingarten for Plaintiff, Cross-defendant and Appellant.

Walker, Schroeder, Davis & Brehmer and George W. Brehmer, Jr., for Defendants, Cross-complainants and Respondents.

TAYLOR, J.—This is an appeal by a real estate broker, Dorothy L. Hale, doing business as California Real Estate, from a judgment in favor of her principals, respondents Wolfsen, on their cross-complaint for rescission of a real estate transaction that was not completed.

Appellant contends that: 1) the court erred in concluding that she was a subagent of respondents and had violated her fiduciary duty toward them; 2) the evidence does not support the finding that she made material misrepresentations and induced respondents to enter into the transaction; 3) the court erred in failing to make the special findings of fact she requested; and 4) that she was entitled to the commission sought by her complaint.

Viewing the record most strongly in favor of the judgment, as we must, the following facts appear: In 1965, respondents, who lived in Oakland, owned 420 acres of land in Santa Cruz County (hereafter Santa Cruz property). Respondents had purchased the Santa Cruz property in 1964 for $185,000 and owed $155,000 thereon, payable at $1,200 per month. As they were deriving no income from the Santa Cruz property, respondents employed an Oakland real estate broker, Dean T. Johnson (hereafter Johnson) to advertise for either a sale or an exchange for improved property that could produce income.

Appellant saw Johnson's advertisement and on June 10, 1965, responded to it by asking if Johnson would cooperate. On June 14, 1965, Johnson replied, welcoming cooperation, reciting the terms of commission, and offered a commission split. Appellant responded by a letter dated June 18, 1965, indicating that the Carmel Valley Professional Building (hereafter Carmel Valley property), in which the owners had an equity of $65,000, might be available for a trade.

The Carmel Valley property had been owned by the Houstons, who were friends of appellant and her husband,

Anthony Hale, who was then a real estate salesman in her office. By an agreement dated February 1, 1965, the Houstons had sold the Carmel Valley property to the LaFaves for $212,477.27.

By July. 1, appellant had forwarded to Johnson a copy of the Houston-LaFave agreement, which indicated that at the time the agreement was executed, the LaFaves had paid the Houstons $24,575.67, and an appraisal dated January 1963 that set the then fair market value of the Carmel Valley property at $206,000. Appellant told Johnson that the Carmel Valley property had appreciated in value quite a bit since the 1963 appraisal and furnished information indicating that a substantial portion of the premises was rented. Appellant and her husband were familiar with the Carmel Valley property and the fact that it had been in serious financial distress ever since it had been built; was functionally obsolete from the beginning and physically deteriorated. At the time of the instant transaction, it was practically vacant. A notice of default on the property was filed by the holder of the first deed of trust on March 30, 1965. The building had been constructed by Paul Jones, who was known in the Monterey area as a builder who used very inexpensive post, beam, board and bat rustic-type construction.

Johnson prepared a deposit receipt signed by respondents on July 7, 1965, whereby they agreed to sell their Santa Cruz property for $212,477.27, in return for a right to receive $1,500 per month under the Houston-LaFave agreement, a contract that Anthony Hale believed at the time not to exist. On that date, the Carmel Valley property had a fair market value of $80,000. On July 7, 1965, the unpaid principal balance due to the Houstons from the LaFaves was $179,641.70. The existing first and second loans against the property, which respondents agreed to assume, totaled $121,259.70.[1] The deposit receipt also provided that the total commission on the transaction would be split between Johnson and appellant. Appellant's share of the commission was $8,374.37.

All of the negotiations that led up to the signing of the deposit receipt occurred between Johnson and appellant. Neither Johnson nor respondents visited the Carmel Valley property before the deposit receipt was signed or before the documents were delivered to escrow. Respondents relied on

---

[1]Thus, the Houston-LaFave contract had an apparent net value of $58,382. Respondents' price was apparently calculated by assigning to it the same value in excess of encumbrances as the Houston-LaFave agreement ($154,095.27, plus $58,382, equals $212,477.27).

the statements and information furnished by appellant, and Johnson did likewise. They believed that the property was sufficiently tenanted to service its obligations. Both Johnson and respondents believed it was reasonable to rely on appellant's representations and, therefore, made no visit to Carmel Valley before signing the deposit receipt.

As appellant was in 'a hurry to conclude the transaction, Johnson personally delivered to the escrow in Monterey the deposit receipt and respondents' check for $10,111.18, dated July 16, 1965. At this time Johnson drove past the Carmel Valley property for the first time, noticed that it was substantially vacant, and realized the misrepresentations made by appellant. Johnson immediately advised respondents to withdraw and stop payment on their check. He also advised them that if they wished to go through with the deal, he and his firm wanted to be released from the agency and would not participate financially. On July 19, 1965, respondents stopped payment on their check and the escrow never closed. Subsequently, respondents sold the Santa Cruz property to another purchaser. Appellant commenced this action for her commission under the deposit receipt on September 17, 1965, and respondents cross-complained for rescission on grounds of fraud.

The trial court found that prior to the signing of the deposit receipt on July 7, 1965, appellant represented to respondents that: 1) the Houstons had a substantial equity in the Carmel Valley property; 2) based on a written appraisal dated January 1963, the fair market value of the Carmel Valley property at that time was $206,000; 3) in the two-year period since the appraisal, the property had appreciated in value "quite a bit"; and 4) a substantial portion of the Carmel Valley property had been rented.

The court found that each of the above representations was false and misleading, and had been made by appellant without knowing them to be true and knowing the Wolfsens would rely on them, and that appellant should have known that the representations were not true. The court further found that respondents reasonably believed the representations to be true and executed the agreement with the Houstons and agreed to pay the commission in reliance thereon, and that respondents would not have entered into the transaction if they had known the truth. The court also found that appellant was a subagent of respondents and owed them a duty of utmost good faith, which she breached by failing to ascertain all of

the pertinent facts about the Carmel Valley property and by making statements and representations to them that she did not know were true. Accordingly, the trial court concluded that appellant was not entitled to any relief on her complaint seeking the commission specified in the deposit receipt, that respondents were entitled to rescission of the transaction because of appellant's constructive fraud, and were excused from performance of their agreement with the Houstons, and entered its judgment in favor of respondents.

Appellant first contends that the trial court erroneously concluded that she was a subagent of respondents. However, the court's finding of subagency is not a conclusion of law but one of fact (*Bergtholdt* v. *Porter Bros. Co.*, 114 Cal. 681 [46 P. 738]). The uncontroverted evidence indicates that from the beginning, appellant and Johnson were cooperating brokers and that as such, appellant was respondents' agent. Appellant next argues that she could not have been a subagent of respondents as she was representing the Houstons as her principals. However, an agency relationship between appellant and the Houstons would not necessarily be inconsistent with the court's finding that appellant was also a subagent of respondents, nor would the fact that respondents had another agent (Johnson) absolve appellant of her fiduciary responsibilities to respondents (*Buckley* v. *Savage*, 184 Cal.App.2d 18 [7 Cal.Rptr. 328]). It is not necessary for a broker to meet the seller in order to become his agent. In *Johnston* v. *Seargeants*, 152 Cal.App.2d 180 [313 P.2d 41], and *Kruse* v. *Miller*, 143 Cal.App.2d 656 [300 P.2d 855, 61 A.L.R.2d 1231], cooperating brokers who had never met the seller were held liable for their misrepresentations to the seller as subagents.

Nor is there any merit to the contention that appellant was merely a middleman or finder in the transaction. A middleman or finder is a broker whose duties are limited by his contract to introducing the parties to each other and leaving them to negotiate their own transactions (*McConnell* v. *Cowan*, 44 Cal.2d 805 [285 P.2d 261]). Here, the uncontroverted evidence indicates that from the beginning, appellant sought cooperation with Johnson in the sale, carried on correspondence, prepared a proposed exchange agreement, was to receive 50 percent of the commission, and was named in the final deposit receipt. (*Spielberg* v. *Granz*, 185 Cal.App. 2d 283 [8 Cal.Rptr. 190]). Thus, her role clearly exceeded that of a middleman. Furthermore, whenever the acts or omis-

sions of a party causes injury in a real estate transaction, there is a compelling reason not to find him a middleman (*Smith* v. *Howard,* 158 Cal.App.2d 343 [322 P.2d 1034]).

▋ .Appellant attempts to argue that the signing of the deposit receipt agreement made her a third party beneficiary of that agreement and has now eliminated any agency relationship between her and respondents. In the first place, the existence of a third party beneficiary relationship is not inconsistent with an agency relationship which may arise by implication. Furthermore, the record clearly indicates that appellant was not a normal third party beneficiary as she was to have received a commission (*Lingsch* v. *Savage,* 213 Cal. App.2d 729 [29 Cal.Rptr. 201, 8 A.L.R.3d 537]; *Merrill* v. *Buck,* 58 Cal.2d 552 [25 Cal.Rptr. 456, 375 P.2d 304]). ▋ It follows that the trial court properly found that appellant was an agent of respondents and as such owed them the duty to make a full and fair disclosure.

▋ The next and major contention is that the findings that appellant violated her fiduciary duty to respondents by the misrepresentations made are not supported by the evidence. It is readily apparent from our above summary of the facts that there was substantial evidence to support the trial court's findings of fraudulent misrepresentation made by appellant to respondents. As noted, the Carmel Valley property in question, whose financial history and difficulties were well known to appellant and her husband, was owned by some friends of theirs who were known as horsetraders in the real estate business. By furnishing the two-year-old appraisal and indicating that the property had increased in value and misrepresenting the rental picture, appellant induced respondents to enter into the transaction. Appellant's emphasis on speed and insistence that the transaction be consummated very quickly may have discouraged both respondents and Johnson from inspecting the property. Also, appellant knew that respondents had payments of $1,200 on the Santa Cruz property which produced no income, and wanted to change their investment to income-producing property.

▋ A representation may either be express or implied (*H. W. Smith, Inc.* v. *Swenson,* 105 Cal.App. 60 [286 P. 1050]) and may arise from silence (*Schoenberg* v. *Romike Properties,* 251 Cal.App.2d 154 [59 Cal.Rptr. 359]) or nondisclosure (*Lingsch* v. *Savage, supra*). ▋ Where a party states a matter that might otherwise be only an opinion and does not

state it as the mere expression of his own opinion but as an existing fact material to the transaction so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact (*Crandall* v. *Parks,* 152 Cal. 772 [93 P. 1018]). ■ A representation concerning income is a representation of fact (*Mariani* v. *Schonfeld,* 126 Cal.App.2d 187 [271 P.2d 940]). Reliance on the opinion of an agent is justifiable (*Schoenberg* v. *Romike Properties, supra*). ■ Even one under no duty to speak as to a matter, if he undertakes to do so, he must make a full and fair disclosure (*Sullivan* v. *Helbing,* 66 Cal.App. 478, 483 [226 P. 803]). ■ Here, appellant sent to Johnson a copy of the 1963 appraisal of the Carmel Valley property and indicated that the property had appreciated "quite a bit" in value since that time. She also intimated that the rentals were sufficient to meet the loan payments. The value of the Carmel Valley property on the date of the transaction was $80,000, although the Houston-LaFave agreement indicated a price of $206,000. The trial court's finding of constructive fraud under the circumstances, rather than actual fraud, was amply supported by the evidence. The same is true of the court's finding that appellant violated her fiduciary duty towards respondents. In view of this conclusion, it is not necessary to discuss appellant's contentions concerning respondents' duty of independent investigation. We merely note that real estate brokers are under a duty to deal fairly with all parties, and be well informed on current market conditions.

Finally, appellant contends that the trial court erred by failing to make special findings as requested and ruling against appellant's objections to findings. However, her contentions overlook the fact that all of her representations to Johnson as agent for respondents were representations to respondents themselves (Civ. Code, § 2332). Thus, appellant's objections to the findings concerning her misrepresentation and respondents' reasonable reliance are groundless. Furthermore, the court made adverse determinations on all of the material issues on which special findings were requested by appellant.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.