Filed 4/26/13  Zivku v. DeLuca CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JON ZIVKU, Plaintiff and Appellant, v. DINO A. DELUCA, Defendant and Respondent. | D059978 (Super. Ct. No. 37-2009-00051778-CU-PN-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Jon Zivku purchased commercial retail property from Dino DeLuca subject to a lease with an automobile dealership, P.J.P. Enterprises, Inc. (referred to here as Escondido Mitsubishi).  After the sale closed, Zivku sued DeLuca for fraud, alleging that DeLuca affirmatively misrepresented and/or failed to disclose information relating to Escondido Mitsubishi's financial strength.  After a trial, the jury returned a special verdict finding Zivku did not meet his burden to prove DeLuca made a "false representation of an important fact to Jon Zivku" or that DeLuca failed "to disclose an important fact that

Jon Zivku did not know and could not reasonably have discovered." Based on this verdict, the court entered a defense judgment.

On appeal Zivku challenges the sufficiency of the evidence to support the jury's findings. We reject his contentions and affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

DeLuca did not timely file a respondent's brief in this case.[1] However, an appellant has the burden of showing reversible error even in the absence of a respondent's brief. (See *County of Lake v. Antoni* (1993) 18 Cal.App.4th 1102, 1104; Cal. Rules of Court, rule 8.220(a)(2).) Moreover, under appellate rules governing substantial evidence challenges, we view the evidence in the light most favorable to the prevailing party (DeLuca) and assume all credibility disputes were resolved in his favor. (*Gooch v. Hendrix* (1993) 5 Cal.4th 266, 279.)

According to the testimony presented at trial, DeLuca owned a large commercial parcel of property in Escondido, and in August 2005 entered into a five-year triple net lease with Escondido Mitsubishi. The principals of Escondido Mitsubishi were Patrick and Jerilyn Poulain and David Van Riper. Each of these parties provided personal guaranties on the lease. Van Riper was a successful banker; his net worth was approximately $5 million. The Poulains' net worth was more than $1 million.

Pursuant to the lease terms, DeLuca developed and improved the property to be used as a Mitsubishi auto dealership, and Escondido Mitsubishi paid for a portion of the

---

[1]     Before the merits panel was assigned this matter, the court denied DeLuca's request for leave to file a late brief and denied his reconsideration motion.

2

tenant improvements.  Escondido Mitsubishi then moved into the premises and began operations.  In late 2006, DeLuca listed the property for sale at $4.6 million.  At the time, the commercial real estate market was at its peak; there were numerous real estate investors with access to substantial amounts of cash; very few properties were available; and financing was easy.  Additionally the property was in an excellent location for a new car dealership.  It was located near a major highway (Highway 78) and was surrounded by several other automobile dealerships.

Not surprisingly, DeLuca quickly received numerous offers, one of which was from Zivku, an experienced real estate investor.  Zivku had recently sold one of his properties and had $4.1 million on deposit with a section 1031 tax-exempt exchange company.  He needed to promptly reinvest this money to defer paying capital gains taxes.

Represented by real estate brokers, Zivku made an "all-cash" offer of $4.1 million.  After negotiations, in January 2007, the parties signed a purchase agreement at $4.55 million that included financing and other contingencies.  The purchase agreement was subject to the Escondido Mitsubishi primary lease and a second lease between Escondido Mitsubishi and DeLuca pertaining to an adjacent storage lot.  The contract provided for a 60-day escrow and a 21-day due diligence contingency period.  In response to Zivku's request, DeLuca later extended this due-diligence period several weeks until February 26, 2007.

During the due diligence period, DeLuca directed his real estate agents to provide any information requested by Zivku, and encouraged Zivku to seek and obtain relevant information, including information about Escondido Mitsubishi.  However, Zivku never

3

spoke with the tenant, or obtained verification of its financial stability or financial history. Zivku only once walked through the tenant's property, and found it to be in excellent condition. Although the purchase contract obligated DeLuca to provide his financial statements on the property for the previous year, he did not do so, explaining that these records were destroyed by water damage in a flood. Zivku did not request copies or seek back-up information from other sources.

Escrow for the sale closed on March 16, 2007. At the time, the remaining term on the Escondido Mitsubishi lease was three and one-half years (with two five-year options). The first rent check from Escondido Mitsubishi was due April 1, 2007. After a 10-day grace period, Zivku spoke with Poulain, one of the lease guarantors, who said the rent would be paid. However, when Escondido Mitsubishi later gave Zivku a $35,724 check, it was returned for insufficient funds and was never replaced. The rent for May 2007 was also unpaid. Soon after, Zivku served the tenant with an eviction notice. By the end of July, Escondido Mitsubishi had vacated the premises. Although a third party who operated another Mitsubishi dealership approached Zivku about financially assisting Escondido Mitsubishi, after meeting with Zivku he withdrew this offer, concerned about Zivku's focus on initiating litigation without making any effort to work with the tenants.

Within one year, Zivku sold the property at a substantial loss. DeLuca's evidence showed this loss resulted primarily from the substantial downturn in the commercial real estate market.

Zivku sued DeLuca and various parties, including his real estate broker, the appraiser, and the lease guarantors. After obtaining default judgments or settling with all

4

of these parties[2] except DeLuca, a trial was held on Zivku's fraud claims against DeLuca.

At the trial, Zivku claimed DeLuca and/or his agents made various affirmative misrepresentations about Escondido Mitsubishi's financial stability and its compliance with rental obligations. Some of the alleged misrepresentations were contained on the offering circular, which referred to Escondido Mitsubishi as a "trophy auto dealership facility" and stated that the property had a capitalization rate of 6.55 percent, reflecting a strong net operating income. Other alleged misrepresentations were contained on tenant estoppel certificates signed by DeLuca and Escondido Mitsubishi principals. These certificates indicated that Escondido Mitsubishi was current on rent and triple-net charges; there had been only one rent concession (on the primary lease); there were no other benefits or modifications; and Escondido Mitsubishi had never defaulted on the lease.

To prove these representations were false, Zivku presented undisputed evidence that Escondido Mitsubishi had failed to pay the full rent due for several months and that during the escrow period two checks had been returned for insufficient funds (the January and February 2007 rent checks). With respect to the storage lot lease, the evidence showed Escondido Mitsubishi had never paid the required rent because DeLuca had orally modified the lease to defer rent and other charges until Escondido Mitsubishi vehicles were actually stored on the lot.

---

[2]     Zivku settled with guarantor Van Riper for $300,000.

5

At the conclusion of the jury instructions and closing arguments (which are not contained in the appellate record), the jury was given a special verdict form with numerous questions regarding the affirmative misrepresentation and failure to disclose theories underlying Zivku's fraud claim. After a brief deliberation period, the jury found in DeLuca's favor on the first question regarding each of these theories. Specifically the jury answered "no" to the following questions: (1) "Did . . . DeLuca make a false representation of an *important fact* to Jon Zivku?" and (2) "Did . . . DeLuca fail to disclose an *important fact* that . . . Zivku did not know and could not reasonable have discovered?" (Italics added.) As directed by the verdict form, based on these responses the jury did not answer the questions on the remaining fraud elements, including intent, actual and justifiable reliance, and damages.

DISCUSSION

Zivku contends there was insufficient evidence to support the jury's factual findings that DeLuca did not make a false representation about, or fail to disclose, "an important fact."

In determining whether substantial evidence supports a jury's finding, we "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) "It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the

6

judgment." (*Id.* at pp. 630-631.) If substantial evidence is present, "no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." (*Id*. at p. 631.)

The fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct. " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267.) Additionally, "error alone does not warrant reversal." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) " ' "The burden is on the appellant, not alone to show error, but to show injury from the error" ' " by demonstrating that absent the error, a different result would have obtained. (*Ibid.*) " 'Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal.' " (*Ibid.*)

Under these review principles, we conclude the jury findings were fully supported and there was no prejudicial error.

First, with respect to the storage lot lease, there was evidence supporting a finding that despite the information on the tenant estoppel certificates, Zivku was aware before the end of the due diligence period that the lease had been orally modified and Escondido Mitsubishi was not required to pay rent on the storage lot until it used this lot for its

vehicles. Thus, the jury could have reasonably found there was no material false statement or failure to disclose with respect to this lease.

Second, with respect to the primary lease, even assuming DeLuca failed to disclose relevant information, or made false representations, regarding the financial strength of Escondido Mitsubishi or the extent to which this tenant had timely paid its rent, the jury verdict reflects that the jury found this information was not "important" to the transaction.

To prove fraud, a plaintiff must show there was a *material* misrepresentation or the failure to disclose a *material* fact. (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1557; *Okun v. Morton* (1988) 203 Cal.App.3d 805, 828.) As the jury was instructed, this element generally requires the plaintiff to establish a reasonable person would consider the fact to be important in the particular matter at issue. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977; *Charpentier v. Los Angeles Rams Football Co.* (1999) 75 Cal.App.4th 301, 312-313; see also CACI No. 1905.) Information is considered important or material if " 'a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action *in the transaction in question.*' [Citations.]" (*Engalla, supra*, 15 Cal.4th at p. 977, italics added.) Thus, "materiality is generally a question of fact" unless there is only one reasonable inference from the facts. (*Ibid.*)

In this case, there was substantial evidence supporting a finding that the information about Escondido Mitsubishi's financial strength and/or its recent compliance with lease obligations would not have been "material" or "important" to a reasonable

8

person under the particular circumstances of this real estate transaction. First, the evidence showed that the sale occurred at or near the peak of the market in early 2007 when the price of real estate had been rapidly escalating. At the time, there were very few commercial properties for sale in the relevant area, numerous buyers had made offers on DeLuca's property, and Zivku had a substantial amount of money he needed to promptly invest in a section 1031 exchange to avoid substantial adverse tax consequences. Additionally, the Escondido Mitsubishi primary lease term was for about three and one-half more years, and an individual with high net worth had personally guaranteed the tenant's obligations. Thus, regardless of the tenant's stability, a reasonable buyer would understand that this particular tenant was committed only for the short term and the buyer would be fully protected by the personal guaranty in the event of a tenant default before that time. Moreover, the tenant's building was brand new; the improvements were excellent; and the location of the property (near other new car dealerships) was outstanding. Further there was an independent appraisal valuing the property at about $4.6 million, and the evidence showed that the tenant's financial strength was not a significant component of this valuation. Under these facts, a jury could have reasonably found that even if DeLuca made certain false statements concerning the existing tenant, these statements were not material to the transaction under the particular circumstances of the case.

Zivku argues that "[r]epresentations by sellers concerning the past income generated by commercial properties marketed as income producing ones are material to such transactions." We agree that the amount of income historically produced by a

9

particular tenant will typically be a material fact in a commercial real property transaction. But this conclusion is not compelled as a matter of law. Zivku cites several decisions in support of his argument that tenant income information is necessarily material. (See *Hale v. Wolfsen* (1969) 276 Cal.App.2d 285; *Barnes v. Persson* (1955) 131 Cal.App.2d 515; *Mariani v. Schonfeld* (1954) 126 Cal.App.2d 187; *Wilson v. Shultz* (1951) 102 Cal.App.2d 345.) However, in each of these cases, the reviewing court found substantial evidence to support the factfinder's conclusion that the particular representation about past business income *was* material to the sale or lease, and the court never stated or suggested that the conclusion was anything other than a factual determination. In this case, as in *Hale*, *Barnes, Mariani*, and *Wilson*, we have found substantial evidence supported the jury's finding regarding materiality. Under the totality of the circumstances here, there was sufficient evidence to support a conclusion that the statements made by DeLuca about the existing tenant (or facts that he failed to disclose) were not material to Zivku's decision to purchase the property.

Additionally, even if the jury's responses to the material misrepresentation and omission questions were unsupported, Zivku has not met his burden to show a reasonable probability the result would have been different on the other elements of his fraud claim. It was undisputed at trial that during the due diligence period, DeLuca gave Zivku the opportunity, and encouraged Zivku, to review all relevant tenant information and confirm any of DeLuca's statements. It was also undisputed that DeLuca was willing to provide an additional extension of the due diligence period if requested. However, neither Zivku nor his agents performed any independent investigation of the tenant, and never spoke

10

with the tenant representatives or sought verification of the tenant's financial information. Moreover, Zivku acknowledged at trial that against his brokers' advice, he waived all the contingencies on February 26, and the facts showed additional investigation could have revealed the negative facts about Escondido Mitsubishi's financial situation.

On this record, regardless of the materiality finding, the outcome of the trial would have been the same. It is not reasonably likely the jury would have found Zivku actually or justifiably relied on DeLuca's information regarding Escondido Mitsubishi's financial strength before purchasing the property and/or that the omission of certain information about Escondido Mitsubishi's financial history had any effect on his decision to purchase the property.

Zivku had his day in court and was provided a full and fair trial. After hearing all the facts, the jury found he did not prove his case. The evidence supported this decision. On this record, there is no basis to reverse the judgment. (Cal. Const., art. VI, § 13 [no reversible error "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; Code Civ. Proc., § 475 [judgment not reversible "unless it shall appear from the record that such error . . . was prejudicial . . . and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"].)

11

DISPOSITION

Judgment affirmed.  No costs awarded because respondent did not timely file a

respondent's brief.


                                                    HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


AARON, J.